[Crim. No. 3499. First Dist., Div. One. Oct. 2, 1958.]

THE PEOPLE, Respondent, v. NOLAN WASHINGTON, Appellant.

*Assigned by Chairman of Judicial Council.

Thomas Francis Lyons, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

ST. CLAIR, J. pro tem.*—Appellant was charged in the first count, with violating section 11500 of the Health and Safety Code, possession of marijuana; and in the second count with violating section 11714 of the same code, unlawfully

---

*Assigned by Chairman of Judicial Council.

offering to sell, furnish and give a narcotic to a minor. The complaint set out four prior narcotic convictions, all misdemeanors, and a felony forgery conviction. All prior convictions were admitted. The jury found the appellant guilty on the first count and not guilty on the second count.

The nature of the points raised by appellant on appeal is such as to require a rather detailed statement of the facts. The points are:

I. There was no reasonable or probable cause for the original arrest of the appellant.

II. There was no reasonable or probable cause for the search of the appellant's automobile, or there was no reasonable relationship between the arrest and the search.

III. It was error for the trial court to admit certain evidence seized in violation of the rights of a third party.

IV. The People committed error in introducing, in rebuttal, evidence linking the appellant to possession of the very marijuana which was the basis of the proof of the violation proved in the case in chief.

V. The court erred in denying a motion for a continuance or other extension of time to permit the appellant to submit the rebuttal evidence to his own chemist for analysis.

VI. The errors were prejudicial.

#### STATEMENT OF FACTS

At 2 a.m. on August 20, 1957, a police officer approached a car parked in the vicinity of DeFremery Park in Oakland, California. The appellant and a 17-year-old girl named Mrs. Charlsetta Cross were sitting in the car. The officer could see both of their heads. As he approached the car, he saw the appellant make an arm motion in or toward the back seat. The officer approached the car on the passenger side where Mrs. Cross was seated. The officer asked the girl if everything was all right, to which she replied in the affirmative.

The officer asked for and was shown appellant's driver's license and then checked the registration. Appellant having stated the car was his, a discrepancy arose as the car was registered to another Washington. In addition, the appellant's license carried a notation that he was not permitted to own a car. The officer ordered the appellant to descend from the car, which he did. As he descended the officer recognized the appellant as an ex-convict but could not remember the crime of which he had been convicted.

The officer requested the appellant to turn his back so that he, the officer, "could pat him down for weapons." The appellant was also requested to place his hands on the automobile so that the officer could determine whether or not he was armed. Appellant refused to cooperate in either way. Thereupon the officer handcuffed the appellant and radioed for help.

One of the answering officers found the remains of a marijuana cigarette wrapped in a cardboard "crutch" next to the car. (The theory of a "crutch" apparently being that by wrapping it around a cigarette one could smoke it down to a shorter length than otherwise.) The crutch matched and came from a torn matchbook discovered in the girl's purse.

The torn matchbook had been discovered in the girl's purse under circumstances which the appellant claimed shows that she was coerced into showing the contents to the police. At the trial admission of the matchbook was challenged on various grounds, including illegal search. After examination on voir dire by appellant's counsel and by the court, the court made a finding that the showing of the contents of the purse was voluntary on the part of the girl.

The girl's testimony definitely linked the appellant to the marijuana and to the crutch and its use by him.

Mrs. Cross testified that she had joined the appellant at about 9:30 on the evening of the 19th. After a series of excursions to a hamburger place, to Union Street near her house, to a restaurant and bar, and to some "projects," they arrived at DeFremery Park. While they were parked and conversing, appellant asked her "did [she] want to get loaded," holding up a brown cigarette. She declined. Appellant lit the cigarette with a match borrowed from Mrs. Cross and smoked it. Later appellant asked for the matchbook again. He wrapped the cigarette in part of the matchbook. The police arrived shortly thereafter. The matchbook had been placed on the dashboard and Mrs. Cross put it in her purse.

The police minutely searched the automobile but found no contraband, nor did they at any time find any on the appellant.

At the start of the trial the court ordered "the marijuana evidence that will be introduced" to be made available that same day to a defense chemist to be appointed by the court. The material found in the crutch alongside of the car was turned over to the defense chemist. At the trial the prose-

cution's chemist testified that the material in the crutch was marijuana. The defense chemist did not testify. By stipulation his report went into evidence and was read or exhibited to the jury. The defense chemist agreed that the contents of the crutch were marijuana and further stated that colored stains on the brown paper surrounding the marijuana were lipstick. The girl had testified that neither she nor the appellant had on any lipstick on the night in question.

Appellant went on the stand. On cross-examination the People examined him at length concerning the trousers that he had on the night of his arrest. He identified them and denied that he had ever carried any marijuana in these trousers. On rebuttal, the People produced evidence to the effect that 14 days before the trial a police officer had scraped the dust and lint out of each pocket in the clothes of the appellant and had turned the scrapings over to the prosecution chemist. The prosecution chemist testified that by microscopic examination he could come to the conclusion that the tracings contained marijuana. Photographs were introduced of the alleged tracings of the scrapings in the pocket.

The appellant's counsel claimed surprise but did not object on the grounds of illegal search. He did request that the tracings be submitted to the defense chemist. On the alleged grounds of pressure of time the court denied this motion. The case was sent to the jury and before the verdict the jury came back in and requested that they have read to them certain testimony concerning the trousers. The jury found the appellant guilty of the possession of marijuana as charged in the first count but not guilty of giving marijuana to a minor, as was alleged in the second count.

On the motion for a new trial the defense chemist testified that the tracings from the pocket had been made available to him, that there was not sufficient quantity to make a determination by microscopic examination, that the photographs could be that of either marijuana or other vegetable material and that with such a small amount the only positive test would be a chemical test. The court denied a motion for a new trial.

I.

Was there reasonable or probable cause for the arrest of the appellant?

The appellant relies on California Penal Code, section 836, which lays down the rule for officers making an arrest without a warrant. The section reads as follows:

"A peace officer may make an arrest in obedience to a warrant, or may, without a warrant, arrest a person:

"1. Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence.

"2. When a person arrested has committed a felony, although not in his presence.

"3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed."

Appellant cites and relies on *People* v. *Simon*, 45 Cal.2d 645 [290 P.2d 531], holding that arrest and search is not justified merely because appellant was parked in an automobile with a woman at late and unusual hours, and *People* v. *Sanders*, 46 Cal.2d 247 [294 P.2d 10], holding that the fact that a person is a past offender is not probable cause to arrest him. Also, *People* v. *Gale*, 46 Cal.2d 253 [294 P.2d 13], where the original stopping of the defendant who was driving an automobile was proper and when the questions of the officer brought replies consistent with innocence, no probable cause was established to arrest the defendant and search his car.

The vice of the appellant's position is that he ignores the sequence of events. The original answers of the appellant to the officer's first question developed inconsistencies, as did the fact that appellant's claimed ownership of the car was not consistent with the registration card in the car. The officer asked the appellant to step out of the car which he did, apparently voluntarily.

On brief, the respondent refers to the appellant's actions as "the appellant resisted arrest"; "resistance by the appellant"; and "the appellant became argumentative to a degree so as to necessitate handcuffing him." Appellant, on brief, states, "The defendant was arrested . . . He was handcuffed. . . ."

It is not clear whether the parties considered the order to descend from the car as the arrest or whether it was the handcuffing. Both appear to agree that the arrest was completed upon the handcuffing.

There have been many cases construing section 836 of the Penal Code. ██ In *People* v. *Jaurequi*, 142 Cal.App.2d 555, at pages 559-560 [298 P.2d 896], the following language, quoted and approved in *People* v. *West*, 144 Cal.App.2d 214 [300 P.2d 729], was used: " 'The term, reasonable or probable

840

cause, has been defined: "By 'reasonable or probable cause' is meant such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion, that the person accused is guilty." (*In re McCarty*, 140 Cal.App. 473, 474 [35 P.2d 568].)

" 'The term, probable, has been defined as meaning "having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt." (*Ex parte Heacock*, 8 Cal.App. 420, 421 [97 P. 77].)' (*People* v. *Novell*, 54 Cal.App.2d 621, 623-624 [129 P.2d 453].)

"It was stated in *People* v. *Brite*, 9 Cal.2d 666, at page 687 [72 P.2d 122] : ' "Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." (Citing cases.)

" 'Reasonable or probable cause is a question of law, where there is no conflict to be decided by the court. (Citing cases.)'

█ "There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances. (*Go-Bart Importing Co.* v. *United States*, 282 U.S. 344, 357 [51 S.Ct. 153, 75 L.Ed. 374].)"

█ The officer testified as follows: "As I got him out of the car I recognized him as a past offender. I didn't remember exactly what his offense was, but I asked him to turn around so I could pat him down for weapons, at which time he refused to turn around. I took him away from the car door of his car and took him to the rear of my car, again asked him to put his hands on the rear deck of the car so I could pat him down for a weapon. He refused. He kept turning around. So I put the handcuffs on him, at which time I put him in the rear of my car, hit the radio and asked for assistance."

The appellant's testimony was substantially the same except his version of the events after he got out of the car was that he did turn around and the officer did pat him down, i.e., feel him for weapons.

There would seem to have been sufficient grounds for the actual arrest, under the circumstances.

II.

*Was there reasonable and probable cause for the search of the appellant's automobile?*

Preliminarily it should be noted that the search of the car and the appellant's person did not turn up any marijuana.

To observe that which is patent and open is not a search. (*People* v. *Jaurequi*, 142 Cal.App.2d 555, *supra*; *People* v. *Martin*, 45 Cal.2d 755 [290 P.2d 855].)

The search of the automobile was not occasioned by the facts surrounding the actual arrest of appellant but by the discovery of the crutch and the marijuana alongside of the car, still warm. The first officer to approach the car had also seen the motion of the appellant's arm; the torn matchbook cover that fitted the crutch was found in Mrs. Cross' purse before the search. No objection was made to the admission of the crutch and the contents thereof on the ground that they were the products of an illegal search and seizure; hence any objection on that ground has been waived.

We hold that under the circumstances in question the original arrest of the appellant and the subsequent search were reasonable and proper under the circumstances.

### III.

*Was it error for the trial court to admit the torn matchbook cover found in Mrs. Cross' purse?*

The appellant objected to its admission on the ground of an illegal search and seizure. The People relied upon Mrs. Cross' consent. During Mrs. Cross' cross-examination about the emptying of her purse on the seat of the car, she was asked if this was at the officer's request and whether it was done voluntarily. She answered yes to both questions. An objection was made to the second question on the ground that it was asking for an opinion and conclusion. This was overruled. Mrs. Cross was then asked whether Exhibit 2 was similar to the matchbook she gave the appellant that night. Defense counsel then stated he would ask her questions "as to whether or not she did give her consent to the search." The court then stated that Mrs. Cross was the one to make the objection as to the legality of the search.

Defense counsel stated he thought there was authority for his position. A 20-minute recess was taken and after the recess defense counsel cited *People* v. *Mills*, 148 Cal.App.2d 392, 409 [306 P.2d 1005], to the court, to which the court responded, "Yes. You might add *People* versus *Martin* [45 Cal.2d 755 (290 P.2d 855)] to your list."

After a witness was called out of order, defense counsel examined Mrs. Cross on voir dire. At the conclusion of this examination, the court asked, "In other words, you didn't

have anything in your purse that you objected to showing him? A. I didn't think so.''

Shortly thereafter, defense counsel made the objection to the introduction of the match cover, which the court overruled.

Although the court's initial ruling was that defendant was not the proper person to object to an illegal search of Mrs. Cross, after authority was produced, the court agreed with defense counsel, even supplying a citation to a Supreme Court case in point, *People* v. *Martin*, 45 Cal.2d 755 [290 P.2d 855]. Defense counsel was allowed to conduct the voir dire examination. From the court's own questions, it is apparent that the issue of consent was considered by the court.

The question of consent being one of fact (*People* v. *Gorg*, 45 Cal.2d 776 [291 P.2d 469],) we hold that the trial court, on conflicting evidence, properly held that Mrs. Cross consented.

## IV.

█ *Was it error, or abuse of discretion for the trial court to permit the admission of the scrapings from appellant's trouser pocket to be put in evidence on rebuttal?*

The tracings were linked to the watch pocket of the trousers that appellant wore the night of his arrest. It would appear that they were offered as part of the proof of the possession of marijuana. It is difficult to understand in the light of the value of this evidence why the People did not make it available to the appellant under the original order of the court.

█ It is certainly true that the order of proof is well within the discretion of the trial court. █ Appellant relies on *People* v. *Carter*, 48 Cal.2d 737 [312 P.2d 665]; *People* v. *Avery*, 35 Cal.2d 487 [218 P.2d 527], and *People* v. *Cunha*, 107 Cal.App.2d 382 [237 P.2d 12], for the rule that an abuse of discretion may well result from allowing a district attorney by way of rebuttal to bring in evidence that should have been in the prosecution's case in chief. When the trousers were first inquired about during appellant's cross-examination, an objection of immateriality was made. This was overruled, and there do not appear to be any further objections to the introduction of the scrapings or testimony concerning their character on the ground that the evidence was not proper rebuttal. Appellant's briefs do not point out such an objection. It would appear that the appellant has waived any objection on this ground.

## V.

 *Was it error for the court to refuse the defendant a continuance so his chemist could examine the alleged marijuana that the People put in on rebuttal?*

The appellant when confronted with the testimony concerning the scrapings from the pocket made a timely motion for the tracing to be made available to him for turning over to the defense chemist for analysis. This was denied.

The importance of the testimony concerning the scrapings is shown by the fact that the jury came back in and requested the reading to them of certain testimony concerning the trousers. It should be noted here that these scraping were the only evidence outside of the girl's testimony that squarely connected the appellant with the marijuana. The only evidence concerning the second count, to wit, the offering of the marijuana to a minor, was in the girl's testimony, which testimony was repudiated by the jury in finding the appellant not guilty thereof. At the time that defense counsel asked that the court-appointed chemist be allowed to examine the scrapings, the court inquired whether otherwise the case could go to the jury in the afternoon, and upon being assured that it could, the court denied the motion, saying: ''Well, I think I'll make the same determination as I did in the Bradford case; namely, that in the event of an adverse verdict as far as the defendant is concerned, and he wants to renew his motion, the Court will have the testimony of Mr. Thiesen [the prosecution chemist] verified by Mr. Bradford [the defense chemist] on motion for new trial, so that if there is any reason for doubting the testimony of Mr. Thiesen, why, the Court would be in the position of a 13th juror in passing upon that question. But our calendar is in a condition that the defendants are waiting to be tried, and they're entitled to be tried within 60 days, and I don't like to delay this case an extra day.''

On the motion for new trial, Mr. Bradford testified that if the material subjected to examination contained enough of the component parts of the marijuana plant to get an over-all picture, identification could be made microscopically, but if less than this was available, it was necessary to make a test known as the Dukuenois Reaction, since the appearance of small portions of the plant is similar to that of certain other plants. In his experience, an initial identification of tracings under the microscope had proved incorrect. He testified that the photograph of the tracings was consistent with the pres-

ence of marijuana but the sample was too small to determine conclusively whether it was marijuana by microscopic test alone.

The court denied the motion for the new trial, on the ground that the result would not "have been a bit different if Mr. Bradford had testified during the trial, instead of testifying here the other day."

Mr. Bradford's testimony at least throws some doubt upon Mr. Thiesen's positive identification of the scrapings as containing at least three particles of marijuana in view of his further testimony that he subjected the material only to a microscopic examination. Clearly if Mr. Bradford's testimony had been offered and rejected at the trial, this would have been error. It would seem to be as much error to refuse the defense an opportunity to meet the prosecution's case by allowing examination of the scrapings as it would to refuse the actual testimony. There was a time pressure present, but this was produced by allowing the prosecution to introduce the evidence at the close of the trial, and the request was rejected.

As indicated above, the learned trial judge stated that at the motion for a new trial he would sit as the 13th juror. The Supreme Court, in *People* v. *Robarge,* 41 Cal.2d 628 [262 P.2d 14], has referred to the sometimes unfortunate use of that phrase. Citing *People* v. *Sarazzawski,* 27 Cal.2d 7 [161 P.2d 934] (a 13th juror case) and *People* v. *Cesena,* 18 Cal. App.2d 727, the court said, at page 633 [64 P.2d 732]: "It has been stated that a defendant is entitled to two decisions on the evidence, one by the jury and the other by the court on motion for a new trial."

It is obvious that the appellant did not have the advantage referred to in the last quotation, inasmuch as the jury never heard Mr. Bradford's testimony. Whatever effect this may have had on the verdict, a reading of the proceedings on the motion for a new trial conclusively shows that the trial judge did not do as he described, to wit, sit as a 13th juror. To the contrary, he did just what the court in the Robarge case said he should do (and was not done in the Robarge case) when, at page 634, it said: "As we have seen, it is the province of the trial judge to see that the jury intelligently and justly performs its duty and, in the exercise of a proper legal discretion, to determine whether there is sufficient credible evidence to sustain the verdict."

It would appear to be error not to permit the defendant to bring before the jury the evidence casting doubt on the nature of the scrapings found in his pocket and to allow him only to submit it to the judge on the motion for a new trial.

## VI.

*Was the error prejudicial?*

█ In considering whether or not the above error constituted prejudicial error, the rule is that it must be reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. (*People* v. *Watson*, 46 Cal.2d 818 [299 P.2d 243].) In *People* v. *Avery*, 35 Cal.2d 487, *supra*, it should be noted on the rebuttal point that the court refused to reverse on the ground that the defendant had been given an opportunity to meet the surprise rebuttal testimony. Several other cases which follow the Avery case take the same position that the error is cured when the defendant is given an opportunity to meet the surprise rebuttal. Here, the defendant was not given such an opportunity.

█ The question of prejudice is a difficult one. The result could have been different had Mr. Bradford's evidence gone before the jury. The scrapings were the only evidence linking defendant to the possession of the marijuana cigarette not dependent upon the testimony of Mrs. Cross. That the jury did not put full credence in her testimony is indicated by defendant's acquittal on the second count of the information. She herself testified that she had smoked marijuana cigarettes, "more than four or five," as lately as April, 1957, seven months before the trial. The defendant testified that she left the car and joined some people in another car while they were at DeFremery Park. The marijuana cigarette contained traces of lipstick. Defendant testified that the car of the other people was in the place where he later parked, and even the girl testified that a car had pulled out of that same parking place before they moved in. This is consistent with her testimony that she asked him to go by the place to see if her friend was still there. All the evidence, except that of Mrs. Cross and the scrapings, is as consistent with her having had possession of the cigarette as defendant's having had such possession. In this situation, it cannot be said that impeachment of the prosecution chemist's conclusion concerning the scrapings could not have influenced the result in the case.

The failure to permit the appellant's chemist to have access to the tracings and have his findings before the jury was clearly error. The permitting of the using of the tracings in rebuttal may or may not have been error, inasmuch as no timely objection was made on that ground. However, that ruling was an integral part of the refusal to permit the appellant to have access to the tracings, as was the refusal by respondent to comply with the court's original order and make the scrapings available to appellant at the start of the trial.

The trial court's otherwise proper review of the evidence on the motion for new trial could not cure the fact that the jury was not permitted to hear testimony vital to the defendant's defense.

The conviction depends basically on weighing the evidence of the witness Cross against the evidence of the appellant. The fact that the jury came back in to have reread to it some of the testimony concerning the trousers from which the tracings were taken and refused to convict appellant of the second count emphasizes the closeness of the case to the jury. We are satisfied that in a close case of this nature the error discussed may well have tipped the scales in the balance and hence was in fact prejudicial.

Judgment reversed for a new trial.

Peters, P. J., and Bray, J., concurred.