UNITED STATES of America

v.

Ben SMALLS, Defendant.

United States District Court
S. D. New York.
Oct. 10, 1963.

William J. Quinlan, Asst. U. S. Atty.,
Robert M. Morgenthau, U. S. Atty., S.D.
N.Y., for the Government.

Jonathan L. Rosner, New York City,
for defendant.

BONSAL, District Judge.

Defendant moves under Rule 41(e) of the Federal Rules of Criminal Procedure for an order suppressing as evidence against him in any criminal proceeding an amount of alleged narcotic drugs seized in his apartment at 12–14 East 117th Street, New York City, on November 26, 1962, and directing the return of other personal and tangible objects allegedly taken from the said premises on that occasion.

A hearing was duly held on September 5, 1963. At the hearing defendant testified, as did his sisters Mrs. Rogers and Mrs. Arroyo. The substance of their testimony was that in the late afternoon of November 26, 1962 Mrs. Rogers, accompanied by her young daughter and Mrs. Arroyo's two young sons, went to defendant's apartment, No. 21, at 12–14 East 117th Street. She stated her purpose was to clean the apartment and cook for her brother. A short time later defendant's other sister, Mrs. Arroyo, and her infant daughter entered the apartment. She was followed into the apartment by Agents Manning and Waters of the Federal Bureau of Narcotics. It is conceded that the agents had no search warrant. While Mrs. Arroyo testified that she was shoved into the apartment, the agents' testimony was that the door was ajar and that they just walked in. Defendant was not in the apartment at the time. According to defendant's sisters, one agent kept them and the children in the kitchen and the other agent started a search of the apartment, in the course of which he found some "stuff", and so informed the agent in the kitchen. Thereafter, defendant came into the apartment. The search continued, and with the assistance of defendant, more narcotics were found.

Defendant testified that when he saw the agents after he came into the apartment he informed the agents that everything in the apartment belonged to him and that his sisters had nothing to do with any items therein.

Agent Manning testified that during the month of November 1962 an informant had advised him that a man named Smalls was selling heroin. He further testified that the informer had given reliable information in the past. Acting on the informant's lead, Agent Manning and another agent conducted a surveillance of defendant Smalls and observed him entering his apartment, No. 21, at 12–14 East 117th Street, with other men, staying a short time and then leaving.

On November 26, 1962, the informer told Agent Manning that he had gotten defendant's confidence and was going to his apartment in the late afternoon. Agent Manning and Agent Waters * stationed themselves on the stairway above Smalls' apartment and saw the informer and defendant enter the apartment at approximately 5 P.M. They observed another person enter and leave. Shortly thereafter they observed the informer and defendant leave the apartment and go downstairs. The agents then left for a pre-arranged rendezvous with the informer, who told them that while he was in the apartment (1) he had seen several glassine envelopes of heroin on defendant's bed and (2) an unknown person entered the apartment and ordered some heroin from defendant. The informer also reported that defendant was concerned about police activity and intended to remove the narcotics from his apartment.

On receipt of this information Agents Manning and Waters immediately went back to the apartment. They stated that the door was open and that they entered and identified themselves and their purpose to the two women they found inside. The defendant was not in the apartment but the women informed the agents that he would be back soon. While waiting for defendant, Agent Manning looked through the apartment, and saw some packages of heroin on defendant's bed and found some heroin in the pocket of a jacket. When Smalls entered, the agents testified, he was arrested, and de-

---

* Agent Waters also testified and substantially corroborated Agent Manning's story.

fendant led them to other heroin in the apartment and admitted ownership thereof.

 ▇  Where a search without a warrant is incidental to a lawful arrest, the fruits of the search may be used against the defendant. Ker v. California, 374 U. S. 23, 41, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), and cases cited therein. This rule is an exception to the general principle that a search must rest upon a search warrant. Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed. 2d 1514 (1958).

 ▇▇  Here the search began before the arrest was made. This does not necessarily preclude the search from being incidental to the arrest if the agents had reason to believe that defendant was in the apartment and their purpose was to arrest him. The agents had probable cause to arrest defendant based upon their observations and information supplied to them by a reliable informer. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Therefore, if the agents entered the apartment for the purpose of arresting defendant, and at that time had reason to believe defendant was in the apartment, a search of the apartment might have been incidental to the subsequent arrest. See Jones v. United States, supra, 357 U.S. at 499–500, 78 S.Ct. at 1257–1258, 2 L.Ed.2d 1514; Ker v. California, supra, 374 U.S. at 42–43, 83 S.Ct. at 1634–1635, 10 L.Ed.2d 726.

 ▇  However, here the agents did not have reason to believe defendant was in his apartment. The agents entered the apartment less than an hour after they had seen defendant leave it with the informer, and they did not have reason to believe that defendant had returned to the apartment. Indeed, had one of the agents kept the apartment under surveillance while the other went to meet the informer, it would have been obvious to the agents that defendant had not returned to the apartment.

The agents testified that Agent Manning discovered narcotics in the pocket of a jacket at about the time defendant entered the apartment, which shows that he had been searching through defendant's clothing before defendant entered the apartment. This was a search for narcotics, and not a search for defendant for the purpose of making an arrest. Thus, even if the agents had had reason to believe that defendant was in the apartment, the search they conducted once they were in the apartment, in defendant's absence and prior to his arrest, was unlawful. There is no evidence that any narcotics were visible to the agents either as they looked into the apartment through the open door before they entered the apartment, or as they stood in the kitchen after entering.

 ▇▇  A search that is illegal in its inception is illegal throughout, and does not change character from its success. United States v. DiRe, 332 U.S. 581, 595, 68 S.Ct. 222, 92 L.Ed. 210 (1948). On this principle, the search which occurred after defendant's arrest was illegal.

It is immaterial that following his arrest defendant led the agents to other narcotics in his apartment. He was induced to do so by the success of the earlier illegal search, and his action in so doing cannot be said to have been voluntary. United States v. Watson, 189 F. Supp. 776 (S.D.Cal.1960); cf. Wong Sun v. United States, 371 U.S. 471, 484–487, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

The conclusion that the search was illegal because it was not incidental to the arrest of defendant, makes it unnecessary to pass upon defendant's further contention that the search and arrest were unlawful because the agents entered the apartment through the open door without announcing their authority or purpose. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); Hair v. United States, 110 U.S. App.D.C. 153, 289 F.2d 894 (1961); but cf. Ker v. California, supra; United States v. Garnes, 258 F.2d 530, 533 (2d Cir., 1958), cert. denied, 359 U.S. 937, 79 S.Ct. 651, 3 L.Ed.2d 637 (1959).

Since the search of the apartment was illegal, the motion to suppress the use of anything therein obtained as evidence against the defendant, is granted. Any property found in the apartment which is contraband will be disposed of in accordance with law. United States v. Jeffers, 342 U.S. 48, 54, 72 S.Ct. 93, 96 L.Ed. 59 (1951). As to any items of personal non-contraband property which defendant claims was taken from him and not been returned to him, he is left to his civil remedy.

Motion to suppress the use against defendant of all evidence found in the apartment during the search on November 26, 1962 is granted.

So ordered.