[Crim. No. 8680. In Bank. May 21, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ALAN THOMAS BILDERBACH, Defendant and Appellant.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

John C. Salyer for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and William L. Zessar, Deputy Attorney General, for Plaintiff and Respondent.

TOBRINER, J.—We adjudicate defendant's appeal from a judgment on a verdict finding him guilty of violating Health and Safety Code section 11530, prohibiting possession of marijuana. We reverse the conviction on the basis of the erroneous admission of defendant's confession since the record fails to indicate that, prior to the confession, defendant had been advised of his rights to an attorney and to remain silent, or that he had otherwise waived those rights. We also point out that if, upon a new trial, the question of the admissibility of the confession arises, the trial judge should not only determine whether defendant properly waived his rights to counsel and to remain silent before confessing, but should also decide whether the confession was induced by an illegal search and seizure.

On August 22, 1963, police officers arrested defendant's brother, Bruce Bilderbach, and Jay Becker at the home of Becker's parents for illegally possessing marijuana. While the police were conducting an investigation on the premises, defendant and Sue Jenkins arrived at the home in an automobile owned by Miss Jenkins. After obtaining Miss Jenkins' consent, the officers searched her car and found in the glove compartment a vial containing debris that appeared, and was later analyzed, to be marijuana. Although defendant and Miss Jenkins denied having ever seen the vial before, the officers arrested both of them.

The officers then drove the defendant to his home, which was about 16 miles distant. There the police, during a search without a warrant, uncovered a marijuana cigarette, the ownership of which defendant admitted.

The following day defendant, after being questioned by the police about the marijuana found in Miss Jenkins' automobile, admitted that the narcotic belonged to him. He stated, "Yeah, man, I guess it is. You've got me on the other anyway. It's mine." At the time of this confession defendant was in custody. Nothing in the record indicates that prior to such confession defendant had been advised of his rights to counsel and to remain silent or that he had otherwise knowingly and intelligently waived those rights.

At the trial, which was conducted without a jury, the defendant moved to suppress the evidence obtained as a result of the searches of the car and of his home on the ground that it had been illegally seized. Apparently the trial court's ruling on guilt rested primarily upon the evidence presented on

the motion to suppress because, almost immediately after the court's disposition of that motion, the parties rested.[1]

Upholding the lawfulness of the search of the automobile, the trial judge condemned as illegal the search of defendant's house. After excluding the marijuana cigarette found in the house,[2] the judge nevertheless adjudged defendant guilty. In so ruling the court stated, "there seems to be no question but that he [defendant] admitted to at least two of the officers that he did have at least a joint ownership of the vial, and it was stipulated that it was marijuana."

■ Defendant's confession should not have been admitted into evidence in view of *People* v. *Dorado* (1965) *ante,* p. 338 [42 Cal.Rptr. 169, 398 P.2d 361]. Following *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], in which the United States Supreme Court established that an accused has a right to counsel at the prearraignment accusatory stage and that incriminating statements obtained in violation of that right must be excluded, we held in *Dorado* that the admission of a confession given during that stage requires reversal if the defendant has not been advised of his rights to counsel and to remain silent or if he has not otherwise waived those rights prior to giving the confession.

■ The accusatory stage, or that stage at which the right to counsel accrues, matures when two conditions eventuate: "when the officers have arrested the suspect and the officers have undertaken a process of interrogations that lends itself to eliciting incriminating statements. . . ." (*People* v. *Stewart* (1965) *ante,* pp. 571, 577 [43 Cal.Rptr. 201, 400 P.2d 97].) ■ Defendant confessed the day after he had been arrested. He had already been questioned about the marijuana found in the automobile, and he had previously confessed to the possession of the marijuana found in his home. The Attorney General argues that since the record indicates

---

[1] Early in the trial, when defendant objected to the admission of one of his extrajudicial statements on the ground that the corpus delicti had not been proved, the trial judge stated that he would reserve ruling until the entire case was in, and that he assumed that the evidence was being offered on the question of probable cause for the arrest and search. Testimony as to defendant's admission of ownership of the vial came in shortly thereafter. Subsequently, when almost all of the evidence had been presented, the judge reiterated that "we are on the phase of the case of the admissibility of the evidence solely."

[2] Nothing in the record indicates that the trial judge relied upon defendant's admission that he owned the marijuana cigarette found in the house.

that defendant confessed after being asked only one question he was not exposed to a process of interrogation that lent itself to eliciting incriminating statements. ■ As we pointed out in *Stewart,* however, "in most cases the process of interrogations following an arrest will so lend itself. . . ." (*Id.* at p. 578.) ■ Furthermore, the length of the interrogation is but one factor in the determination. (*Id.* at p. 579.)

The Attorney General unsuccessfully relies upon *United States* v. *Konigsberg* (1964) 336 F.2d 844, which is cited in *Stewart,* as authority for the proposition that the accusatory stage had not been reached. In *Konigsberg* defendant shortly after his arrest made incriminating statements in response to immediate police questions that offered him the opportunity to explain his presence in a garage containing contraband. ■ In the instant case, however, the questioning that elicited the confession occurred after defendant had been in custody for the entire evening and long after the police had questioned him about the marijuana found in the automobile. Under these circumstances, at the time defendant confessed, he was under arrest, and the process of interrogation lent itself to eliciting incriminating statements. Thus the accusatory stage had been reached. (*People* v. *Stewart, supra, ante,* p. 571 [43 Cal.Rptr. 201, 400 P.2d 97].)

■ Since nothing in the record shows that prior to his confession defendant had been advised of his rights to counsel and to remain silent, or that he otherwise waived those rights, the admission of his confession compels reversal. (*People* v. *Dorado, supra, ante,* p. 338; *People* v. *Stewart, supra, ante,* p. 571.)

Defendant advances two further propositions: that the search of the automobile was unlawful because Miss Jenkins did not voluntarily consent to it, and that his confession that the marijuana found in the car belonged to him should not have been admitted on the ground that it constituted a "fruit" of the illegal search of the house. We explain why we find no merit in the first proposition; we discuss the second because the point may arise on retrial.

Defendant urges the unlawfulness of the search of the automobile upon the ground that it was not incident to a lawful arrest. He asserts that since Miss Jenkins' consent to the search took place after her arrest it was involuntary. (See *People* v. *Haven* (1963) 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927].) ■ The record contains evidence, however, that the police arrested Miss Jenkins after the search and that she voluntarily consented to the search. Since evidence on

the issue of the voluntary nature and the time of Miss Jenkins' consent conflicted, and since substantial evidence supports the trial court's finding that the search preceded the arrest and that the consent was otherwise voluntary, we must accept that decision. (See *People* v. *Washington* (1958) 163 Cal.App.2d 833, 842 [330 P.2d 67] ; *People* v. *Guy* (1956) 145 Cal.App.2d 481, 490 [302 P.2d 657]; *People* v. *Smith* (1956) 141 Cal. App.2d 399, 402 [296 P.2d 913].)　For the same reason we do not upset the trial court's holding as to the inadmissibility of the evidence found in defendant's home on the ground of its procurement during an illegal search.

Defendant argues the impropriety of the introduction of his confession that the marijuana in the vial found in the automobile belonged to him. He contends that he confessed only because he was confronted with the cigarette that the trial court held to have been illegally obtained, and that therefore the confession constituted a ''fruit'' of that illegal search. Since we reverse the conviction on the ground of the erroneous admission of the confession, we discuss defendant's contention in the event that, at a new trial, the evidence discloses that defendant had waived his right to counsel prior to the confession. If that occurs, the trial court must determine whether the confession is nevertheless inadmissible as a ''fruit'' of the illegal search of defendant's home.[3]

That the prosecutor may not profit directly or indirectly from an illegal search has been the keystone of the rule excluding illegally obtained evidence.　As the United States Supreme Court has said, ''The Government cannot violate the Fourth Amendment—in the only way in which the Government can do anything, namely through its agents—and use the fruits of such unlawful conduct to secure a conviction [citation].　Nor can the Government make indirect use of such evidence for its case [citation] or support a conviction on evidence obtained through leads from the unlawfully obtained evidence, [citation]. All these methods are outlawed and convictions obtained by means of them are invalidated,

---

[3]Since we reverse on other grounds, we need not discuss the Attorney General's contention that defendant did not specifically object to the admission of the confession and is therefore precluded from arguing on appeal that it must be excluded as the ''fruit'' of an illegal search. Moreover, defendant's failure to object to the admission of the confession on the basis of *Escobedo* and *Dorado* cannot preclude the application of those decisions on this appeal since they had not been handed down at the time of trial. (*People* v. *Hillery* (1965) *ante,* p. 692 [44 Cal. Rptr. 30, 401 P.2d 382].)

because they encourage the kind of society that is obnoxious to free men." (*Walder* v. *United States* (1954) 347 U.S. 62, 64-65 [74 S.Ct. 354, 98 L.Ed. 503]; see also *Nardone* v. *United States* (1939) 308 U.S. 338 [60 S.Ct. 266, 84 L.Ed. 307]; *Silverthorne Lumber Co.* v. *United States* (1920) 251 U.S. 385 [40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426]; *People* v. *Haven* (1963) 59 Cal.2d 713, 718 [31 Cal.Rptr. 47, 381 P.2d 927]; *People* v̇. *Martin* (1955) 45 Cal.2d 755, 760-761 [290 P.2d 855]; *People* v. *Berger* (1955) 44 Cal.2d 459 [282 P.2d 509].)

We have indicated that statements resulting from an illegal search may be inadmissible as being a "fruit" of that search. Thus, in *People* v. *Dixon* (1956) 46 Cal.2d 456, 458 [296 P.2d 557], we held that the testimony "was impelled by the erroneous admission of the illegally obtained evidence and cannot be segregated from that evidence to sustain the judgment." (See *People* v. *Mickelson* (1963) 59 Cal.2d 448, 449-450 [30 Cal.Rptr. 18, 380 P.2d 658]; *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 273 [294 P.2d 23]; *People* v. *Macias* (1960) 180 Cal.App.2d 193, 197-199 [4 Cal.Rptr. 256]; *Hernandez* v. *Superior Court* (1956) 143 Cal.App.2d 20, 24 [299 P.2d 678]; but see *People* v. *Ambrose* (1957) 155 Cal. App.2d 513, 524-525 [318 P.2d 181].)

In applying an exclusionary rule to illegally obtained evidence, the United States Supreme Court has recently said that it could not distinguish between verbal and physical evidence. (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 485-486 [83 S.Ct. 407, 9 L.Ed.2d 441]; see *Fahy* v. *Connecticut* (1963) 375 U.S. 85, 90-91 [84 S.Ct. 229, 11 L.Ed.2d 171].)

In *Wong Sun* an informant told police that he had purchased an ounce of heroin from a "Blackie Toy," proprietor of a laundry on Leavenworth Street in San Francisco. While the other agents remained out of sight, agent Alton Wong, on the pretext that he was calling for laundry, sought to enter. When Toy started to close the door, the agent identified himself as a narcotics officer, but Toy slammed the door and fled to a rear bedroom, where his wife and child were sleeping. Breaking open the door, agent Wong and the other officers followed Toy to the bedroom. There the agents apprehended and searched him. Although a search of the premises uncovered no narcotics, Toy, upon questioning, implicated one "Johnny," who was later identified as Johnny Yee, as a vendor of narcotics.

When the agents contacted Yee, he surrendered a quantity of heroin which he said had been brought to him by Toy and

another Chinese known to him only as "Sea Dog." Toy later identified "Sea Dog" as Wong Sun. The agents then searched Wong Sun's house, discovered no narcotics, but arrested him. Several days after their arraignment and release on bail, Yee, Toy and Wong Sun, during interrogations, furnished unsigned, incriminating statements.

The United States Supreme Court held that the illegal arrest and search of Toy rendered his statement in his bedroom inadmissible as the "fruit" of the agents' illegal action. The court said, "Six or seven officers had broken the door and followed on Toy's heels into the bedroom where his wife and child were sleeping. He had been almost immediately handcuffed and arrested. Under such circumstances it is unreasonable to infer that Toy's response was sufficiently an act of free will to purge the primary taint of the unlawful invasion." (*Id.* at p. 486.)

The Supreme Court also held that the trial court should have excluded the narcotics taken from Yee. The court pointed out that this was not a case "where the exclusionary rule has no application because the Government learned of the evidence 'from an independent source' . . . nor is [it] a case in which the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.' " (*Id.* at p. 487.) The court added, "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " (*Id.* at pp. 487-488.)

The court finally held that "Wong Sun's unsigned confession was not the fruit of that [Wong Sun's] arrest, and was therefore properly admitted at trial. On the evidence that Wong Sun had been released on his own recognizance after a lawful arraignment, and had returned voluntarily several days later to make the statement . . . the connection between the arrest and the statement had 'become so attenuated as to dissipate the taint.' " (*Id.* at p. 491.)[4]

---

[4]In holding that Toy's conviction could not stand on his uncorroborated admission, the court left open the question "whether, in light of the fact that Toy was free on his own recognizance when he made the

We must apply federal standards regarding the exclusion of evidence obtained during an illegal search. (*Ker* v. *California* (1963) 374 U.S. 23 [83 S.Ct. 1623, 10 L.Ed.2d 726].) Clearly, the United States Supreme Court test in *Wong Sun* relating to evidence excludable as the product of an illegal search and seizure applies to the states. (See *Traub* v. *Connecticut* (1963) 374 U.S. 493 [83 S.Ct. 1899, 10 L.Ed.2d 1048]; *Fahy* v. *Connecticut* (1963) 375 U.S. 85, 90-91 [84 S.Ct. 229, 11 L.Ed.2d 171]; *Rogers* v. *United States* (1964) 330 F.2d 535, 541; *McNear* v. *Rhay* (1965) —— Wn. 2d —— [398 P.2d 732, 739]; *State* v. *Kitashiro* (1964) —— Hawaii —— [397 P.2d 558]; Broeder, *Wong Sun* v. *United States: A Study in Faith and Hope* (1963) 42 Neb.L.Rev. 483, 557-564: Note (1963) 31 Geo. Wash. L.Rev. 851, 854; but cf. *Mefford* v. *State* (1964) 235 Md. 497 [201 A.2d 824, 831].) We must therefore use the *Wong Sun* test for determining the reach of the "fruits" doctrine. (See Comment, *The Supreme Court, 1962 Term* (1963) 77 Harv.L.Rev. 62, 118.)

Under the *Wong Sun* test evidence should not be excluded merely because it would not have been obtained but for the illegal search if the connection between such evidence and the illegal search has " 'become so attenuated as to dissipate the taint.' " If, however, the connection is not so attenuated and the evidence was " 'come at by exploitation of that illegality,' " then it is excludable. (371 U.S. at pp. 487, 488.)

We do not read *Wong Sun's* application of the "fruits" doctrine to verbal statements as pertinent only in the presence of "oppressive circumstances" (371 U.S. at p. 486, fn. 12); the rationale of the Supreme Court's opinion in *Wong Sun* forecloses such an interpretation.[5] The court reasoned that

[unsigned] statement, that statement was a fruit of the illegal arrest." (371 U.S. at p. 488.) The court also said that the trial court must decide whether sufficient evidence corroborated Wong Sun's admission.

[5]See Broeder, *Wong Sun* v. *United States: A Study in Faith and Hope* (1963) 42 Neb.L.Rev. 483, 524-532; Maguire, *How to Unpoison the Fruit—The Fourth Amendment and the Exclusionary Rule* (1964) 55 J.Crim.L., C. & P.S. 307, 317-318. Cases after *Wong Sun* holding that statements are admissible if voluntary or if not accompanied by "oppressive circumstances" generally involve the problem of statements given after an illegal arrest. (E.g., *People* v. *Freeland* (1963) 218 Cal.App.2d 199 [32 Cal.Rptr. 132]; *State* v. *Traub* (1963) 151 Conn. 246 [196 A.2d 755]; *United States* v. *Burke* (1963) 215 F.Supp. 508, 511, affd. 328 F.2d 399 (1964); *State* v. *Jackson* (1964) 43 N.J. 148 [203 A.2d 1, 12-13]; *Prescoe* v. *State* (1963) 231 Md. 486 [191 A.2d 226, 231]; *State* v. *Kitashiro* (1964) —— Hawaii —— [397 P.2d 558, 562]; *State* v. *Keating* (1963) 61 Wn.2d 452 [378 P.2d 703].) In two of the states from

the admission of statements induced by illegal police action would undercut the policies of the exclusionary rule (371 U.S. at p. 486). If the court were to admit such statements, the police would not be sufficiently deterred from engaging in illegal searches, especially in situations in which they lacked sufficient evidence for a conviction prior to the search. The police would be encouraged to make illegal searches in the hope of obtaining confessions even though the actual evidence seized might later be found to be inadmissible. (Broeder, *op. cit. supra,* at p. 531.)

By means of the admission of statements which might refer to the illegally seized materials, evidence that should have been excluded would be indirectly placed before the court. (See *State* v. *Evans* (1962) 45 Hawaii 622 [372 P.2d 365, 375].) Moreover, the court in *Wong Sun,* after pointing out that the ''broad exclusionary rule'' extends to indirect as well as to direct products of illegal invasions, states that no distinction may be made in this regard between physical and verbal evidence. (371 U.S. at pp. 485-486.) ▆▆ If no such distinction can stand, it follows that verbal evidence which resulted from the illegal search must be excluded just as physical evidence is excluded irrespective of the absence of ''oppressive circumstances.''

▆▆ Even though statements are free of ''oppressive circumstances'' and otherwise voluntarily rendered, they are not exempt from attack on constitutional grounds if they are the product of an illegal search. (See *Wong Sun* v. *United States, supra,* 371 U.S. 471, at p. 486, fn. 12; *Takahashi* v. *United States* (1944) 143 F.2d 118, 122.) The United States Supreme

---

which the above decisions came, the courts in holding inadmissible statements induced by an illegal search and seizure did not mention the presence of ''oppressive circumstances'' or discuss the voluntariness of the statements. (*State* v. *Kitashiro, supra,* 397 P.2d 558, at pp. 565-568; *McNear* v. *Rhay* (1965) —— Wn.2d —— [398 P.2d 732, 739]; but see *McChan* v. *State* (1965) —— Md. —— [207 A.2d 632, 639].) Even some decisions excluding statements after an illegal arrest do not mention these elements. (*Gatlin* v. *United States* (1963) 326 F.2d 666, 671-673; *State* v. *Mercurio* (1963) —— R.I. —— [194 A.2d 574]; see *Commonwealth* v. *Jacobs* (1963) 346 Mass. 300 [191 N.E.2d 873, 880-881].) We do not pass on any question involving the admissibility of statements given by an accused after he has been illegally arrested. Although the language in some cases indicates that statements induced by the illegal search are ''involuntary'' (see, e.g., *United States* v. *Smalls* (1963) 223 F.Supp. 387, 389), the use of the word ''involuntary'' in this connection does not necessarily mean that such statement was coerced; it may only indicate that the defendant was motivated to make the statement when confronted with the evidence obtained during the illegal search.

Court has held in other situations that voluntary statements are excludable on constitutional grounds. (*Escobedo* v. *Illinois, supra,* 378 U.S. 478; *Massiah* v. *United States* (1964) 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246].)

 The presence or absence of "oppressive circumstances" is not determinative. Rather, each case should turn on the issue whether the evidence related so closely to the illegal search that the admission of such evidence "would thwart the laudable policies underlying the exclusionary rule." (Broeder, *op. cit. supra,* at p. 548.)

With this principle in mind, the trial court should examine the facts in order to determine if the statement was induced by the illegal search. (*Fahy* v. *Connecticut* (1963) 375 U.S. 85, 91 [84 S.Ct. 229, 11 L.Ed.2d 171].) If the statement was so induced it was not "an act of free will to purge the primary taint of the unlawful invasion," but was " 'come at by exploitation of [the] illegality' " (371 U.S. at pp. 486, 488) and is therefore excludable.[6]

The judgment is reversed.

Traynor, C. J., Peters, J., Peek, J., Burke, J., and White, J.,* concurred.

McCOMB, J.—I dissent. I would affirm the judgment.

---

[6] "In the *Wong Sun* case the statements of Toy made simultaneously with the illegal arrest and the unsigned confession of Wong Sun made several days thereafter are at the opposite ends of the pole in considering the fruit of the poisonous tree. Between these two extremes there is a line, on one side of which the fruit is contaminated by the illegal arrest, and on the other side of which the taint has been dissipated. Where this line shall be drawn is a question of fact to be determined in each case." (*United States* v. *McGavic* (1964) 337 F.2d 317, 319; see also *Smith* v. *United States* (1964) 335 F.2d 270, 275; *State* v. *Kitashiro* (1964) —— Hawaii —— [397 P.2d 558, 565-568].)

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.