[Crim. No. 2773.   Fourth Dist., Div. Two.   Jan. 21, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. MATTHEW NOLAN RUSLING, Defendant and Appellant.

Richard M. Hippard for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kallay, Deputy Attorney General, for Plaintiff and Respondent.

TAMURA, J.—Following a jury trial defendant was found guilty on all counts of an information charging two counts of sale of marijuana (Health & Saf. Code, § 11531), two counts of sale of dangerous drugs (Health & Saf. Code, § 11912) and one count of sale of heroin (Health & Saf. Code, § 11501), his motion for a new trial and application for probation were denied, and he was sentenced to state prison. He appeals from the judgment of conviction.

Defendant's principal contention is that his conviction resulted in a denial of due process because the police used improper methods in securing and utilizing the services of an informant.

The evidence may be summarized as follows:

On January 12 Bleckert, a paid informant, contacted one Fischer, a person from whom Deputy Sheriff McMullin had previously purchased narcotics, and asked him whether he had "anything" to sell. Fischer replied that he did not but that his "partner" did and to meet him that evening at his home. Bleckert relayed this information to Deputy McMullin and that evening the two picked Fischer up at the latter's home. Fischer directed McMullin to drive to the Caravan Inn in Riverside where he introduced McMullin and Bleckert to the defendant, asked whether McMullin was still interested in buying some "stuff," and nodded towards defendant saying, "There is your man." McMullin and defendant went outside where defendant sold the officer a can of marijuana and three rolls of "reds" (seconal capsules). McMullin also asked defendant whether he could obtain some "smack" (heroin). Defendant made a phone call and said he was then unable to obtain any but would attempt to do so and gave McMullin a business card on which he had written his telephone number.

On the evening of January 14 McMullin telephoned defendant and inquired about the heroin. When defendant replied that he was still unable to obtain any, the officer arranged to purchase some "weeds and pills," and that evening pur-

chased from defendant three cans of marijuana, fifty tablets of amphetamine sulphate, and two rolls of seconal.

On January 15 McMullin arranged a third meeting with defendant and purchased from him ten bindles of heroin.

Defendant did not take the stand. His sole defense was that the method by which the police induced Bleckert to act as an informant so tainted the prosecution's case as to require suppression of all of the People's evidence.

Defense cross-examination of the investigating officers during the People's case in chief and their testimony and that of Bleckert when called as witnesses for defendant revealed that officers had searched Bleckert's home pursuant to a search warrant, found contraband and arrested him, and accepted Bleckert's offer to act as an informant in return toward an agreement to drop charges against him. An officer testified that the offer was accepted because the judge who issued the search warrant had expressed some doubt as to the sufficiency of the affidavit on which the warrant was issued.[1] For his services in assisting the sheriff's office in narcotics investigation, Bleckert was to be paid ''gas money,'' a basic fee of $5 per evening, and an additional $5 for any evening during which evidence was obtained sufficient to prosecute.

Upon revelation of the foregoing facts, defendant moved to strike all of People's evidence. Defendant's principal attack upon the judgment of conviction is based upon a denial of that motion. He contends that the prosecution's evidence should have been suppressed because the informant (a) was compensated on a contingent fee basis and (b) was coerced into service through an unlawful search and seizure in violation of his Fourth Amendment rights.

▮ Defendant relies upon *Williamson* v. *United States* (5th Cir. 1962) 311 F.2d 441, for the proposition that, in the absence of some justification, a conviction based upon evidence obtained by a contingent fee informant must be set aside. In that case Williamson was convicted of possessing ''moonshine'' whiskey on evidence obtained by an informant who had contracted with federal agents to ''catch'' Williamson for a fee of $200. The court condemned the fee arrangement as one designed to ''produce evidence against particular named defendants as to crimes not yet committed'' and held

---

[1] The affidavit is not a part of the record but the officer who executed it testified that it was based upon information an unidentified informant furnished a police matron and that he, the officer, had no contact with the informant and was unable to testify as to his reliability.

that it consituted prima facie evidence of official wrongdoing placing upon the prosecution the burden of coming forward with evidence showing some "justification or explanation" for the arrangement. Subsequent federal cases have confined the *Williamson* decision to its facts and have refused to extend it to situations where officers had prior knowledge of the suspect's illicit activities (*Hill* v. *United States* (5th Cir. 1964) 328 F.2d 988, 989); where the financial arrangement did not relate to a particular named suspect (*United States* v. *Costner* (6th Cir. 1966) 359 F.2d 969; *United States* v. *Baxter* (6th Cir. 1965) 342 F.2d 773); or where the informant had been instructed on the rules relating to entrapment, the suspect had not been singled out in advance, and the informant's testimony was corroborated in detail by an undercover law enforcement officer. (*Bullock* v. *United States* (5th Cir. 1967) 383 F.2d 545.) In *Maestas* v. *United States* (10th Cir. 1965) 341 F.2d 493, the court construed *Williamson's* requirement of "justification and explanation" to refer to a "justification or explanation" for using an informant and not to the financial arrangement and concluded that where the evidence was clear and uncontradicted that no prohibited entrapment occurred, the mere fact that an informant was paid on a contingent basis did not present an issue of entrapment for the jury. The Supreme Court of Illinois has refused to apply *Williamson* to a situation where the fee arrangement was not entered into for the specific purpose of catching a particular named suspect. (*People* v. *Mills,* 40 Ill.2d 4 [237 N.E.2d 697, 704].)

*Williamson* is not controlling in the present case. The rationale of *Williamson* is grounded on federal rules relating to entrapment and does not purport to rest on due process or other federal constitutional principal. Moreover, unlike the informant in that case, Bleckert was not employed and paid for the specific purpose of obtaining evidence against defendant, his activities were restricted and supervised by law enforcement officers, he was instructed not to "frame" anyone or to make any purchases himself, and he played but a minor role in the investigation leading to the prosecution of defendant. In these circumstances the fact that he was paid a nominal contingent fee for his limited participation in the investigation, while relevant to the issue of entrapment, by no means constituted entrapment as a matter of law or otherwise rendered the prosecution's evidence inadmissible.

█ The contention that the evidence against defendant

was tainted because Bleckert's cooperation was allegedly coerced through the use of an invalid search warrant is equally without merit. Assuming that the search warrant was invalid, the connection between the evidence on which defendant was convicted and the illegal search of the informant's house was clearly "so attenuated as to dissipate any taint." (*Wong Sun* v. *United States,* 371 U.S. 471, 487-488 [9 L.Ed.2d 441, 455-456, 83 S.Ct. 407]; see *People* v. *Bilderbach,* 62 Cal.2d 757, 766 [44 Cal.Rptr. 313, 401 P.2d 921].) Moreover, Bleckert testified that he had already fulfilled the bargain he made with the officers and that his services in connection with the investigation of defendant were rendered voluntarily.

Defendant contends that the court erred in precluding defense counsel from propounding a question to one of the investigating officers on cross-examination for the purpose of showing "an abuse of investigative technique and authority, and to prove an attempt to merely accumulate and compound further counts against appellant." Defendant argues that after the first sale of contraband on January 12, the officers had sufficient evidence to arrest and prosecute defendant for the offenses described in counts 1 and 2 and that, therefore, the subsequent contacts, designed to afford defendant the opportunity to commit the offenses charged in counts 3, 4 and 5, were made in violation of the principles enunciated in *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. The contention is without substance. Defendant was not in custody or otherwise deprived of his freedom of action following the first sale of contraband. The question purportedly designed to show that subsequent purchases were made in violation of *Escobedo* and *Miranda* rules was properly ruled to be irrelevant and immaterial.

Defendant contends that the trial court erred in failing to declare a mistrial after Deputy McMullin volunteered the following information on direct examination:

"Q: (By Prosecutor) As to your contacts with Mr. Rusling, was there anything other than a buying and selling of merchandise discussed?

"A: (Deputy McMullin) I believe we did have some general conversation, such as he told me about he and Mr. Fischer going to Mexico and having a big gun battle with the federal police, just general conversation, but no more than friendly conversation." The record discloses that the court heard defendant's motion for a mistrial outside the presence

of the jury, satisfied itself from representations of the prosecutor that the revelation of the information was inadvertent and unintentional, and concluded that the testimony was not so prejudicial that its effect could not be cured by a proper admonition. It accordingly denied the motion and fully and failry admonished the jury to disregard the testimony.[2] This is not a closely balanced case. In view of the state of the evidence, the nature of the defense, and the admonition to the jury, denial of the motion for mistrial did not result in a miscarriage of justice. (*People* v. *Alvarado,* 231 Cal.App.2d 789 [42 Cal.Rptr. 310].)

■ Defendant urges that the prosecution committed a *Griffin* error (*Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]) in commenting upon defendant's failure to testify. In the course of his closing argument, the prosecutor stated: ''The term 'ten dollars per body' was again brought up by Mr. McVay, why shouldn't he be paid, I still don't know the answer to that. I'm paid by the county, other attorneys are, many people are. Mr. Bleckert was also working for the county at that time. Why are they sorry, Mr. McVay and defendant Rusling, that Mr. Bleckert is a free man. Mr. Bleckert certainly in asking and offering his services to the sheriff's office, gave some indication, important indication that he had learned his lesson and was actually doing something for the good of society at this point, and did, ladies and gentlemen.

''*Where has Mr. Rusling shown any inclination to indicate to us that he was not only connected with narcotics,* where has he shown this by his own volunteering or offering the police officers to work for them, anything of that nature, has pled not guilty to five counts involving narcotics and dangerous drugs, and caused—this is our third day of trial now, when the evidence is overwhelmingly against him. Now, why should Scottie Bleckert be criticized as being a free man today, or the police officer be criticized for allowing Mr. Bleckert to be out while Mr. Rusling stands trial.'' [Italics added.]

Defendant complains of the underscored portion of the

[2]''THE COURT: . . . Ladies and Gentlemen, the Court would like to admonish you in this respect; if any testimony may have indicated to you that the defendant here was involved in any other activities which may purport to be of a criminal nature, *you should disregard any such* testimony and recall that the defendant here is simply on trial for the particular charges that are contained in the indictment, and that you shouldn't draw any inference or speculate from any testimony that the defendant has been involved in any other criminal act.''

prosecutor's argument. In the context in which it was made the remark was in the nature of a comment on defendant's failure to admit guilt rather than his failure to testify. The clear implication of the entire paragraph in which the remark appears is that despite overwhelming evidence against him, defendant had the audacity to plead not guilty and to burden the State with a three day trial. As such, although not falling within the proscription of *Griffin,* the statement exceeded the bounds of legitimate argument. ■ Regardless of the weight of evidence against him, a defendant's character may not be impugned because he has elected to stand trial. ■ The presumption of innocence and the obligation of the state to prove guilt beyond a reasonable doubt are fundamental concepts in our system of criminal justice. ■ However, the harmful effect of the comment was not one which could not have been eliminated by prompt and appropriate admonition to the jury had the matter been called to the attention of the court. Defendant having failed to object, move to strike or request an admonition to the jury, may not raise the issue for the first time on appeal. (*People* v. *Beivelman,* 70 Cal.2d 60, 75 [73 Cal.Rptr. 521, 447 P.2d 913]; *People* v. *Modesto,* 66 Cal.2d 695, 716-717 [59 Cal.Rptr. 124, 427 P.2d 788]; *People* v. *Purvis,* 60 Cal.2d 323, 343 [33 Cal. Rptr. 104, 384 P.2d 424].)

■ Even assuming that the remark of which defendant complains might conceivably be deemed a comment on defendant's failure to testify, the error was harmless beyond a reasonable doubt. In view of the overwhelming evidence against the defendant and the nature of the defense, there is no reasonable possibility that a different verdict would have been reached had the objectionable comment not have been made. (*Chapman* v. *California,* 386 U.S. 18, 23 [17 L.Ed.2d 705, 710, 87 S.Ct. 824].)

Judgment affirmed.

McCabe, P. J., and Fogg, J. pro tem.,* concurred.

*Assigned by the Chairman of the Judicial Council.