[Crim. No. 13254.   Second Dist., Div. Five.   June 7, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM THADDEUS HALE et al., Defendants and Appellants.

George McDonald and Harrison W. Hertzberg for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Plaintiff and Respondent.

AISO, J. pro tem.*—By information defendant William Thaddeus Hale was charged with possession of marijuana for purposes of sale (Health & Saf. Code, § 11530.5) and defendant Anthony Brian Roller with possession of marijuana (Health & Saf. Code, § 11530). Their motions to set aside the information (Pen. Code, § 995) were denied.

On August 8, 1966, the case was submitted upon the reporter's transcript of the preliminary hearing (together with exhibits) with defendants reserving their rights to raise objections to the evidence and with all parties reserving their rights to produce additional evidence. Proceedings were continued to August 31, 1966, and subsequently to September 8, 1966. On the September date, all parties rested without offering any additional evidence. Motions to exclude the real evidence and Hale's post arrest statement were made by the respective defendants and overruled. The court, sitting without a jury, found both defendants guilty as respectively charged in the information.

Motions for new trials were denied. Proceedings were ordered suspended as to both defendants and they were granted probation for respective periods of six years. One condition of defendant Hale's probation was that he spend the first 180 days of his probationary period in the county jail. Defendant Roller was ordered to spend his first 15 days in the county jail as a condition of his probation. Both defendants filed notices of appeal from the "Judgment and Sentence."

---

*Assigned by the Chairman of the Judicial Council.

The attempted appeals from nonexistent sentences are dismissed. Appeals from the "judgment" will be construed as appeals from the respective orders granting probation. (Pen. Code, § 1237, subd. 1.)

Upon this appeal they urge that the marijuana and other items of real evidence produced at trial were the products of illegal searches and seizures.

We have concluded that the contention is well taken only as to the marijuana recovered from the upstairs portion of Hale's premises; the balance of the marijuana, pan and scales were legally seized.

### HISTORICAL AND PROCEDURAL FACTS

On December 13, 1965, the date on which both defendants were arrested, Officers Fred J. McKnight and Charles Wilson were members of the Los Angeles Police Department assigned to the narcotics detail. About five days prior thereto, they had received information from an informant (whom McKnight considered to be reliable) that a Bill Hale, living at 8750 Hollywood Boulevard, was in possession of approximately 10 kilograms of marijuana which he was packaging for resale to his select and limited clientele of approximately 150 people.

At the preliminary hearing where only Officer McKnight had testified, the magistrate denied defendants' request that the informant's name be divulged.

Upon a pretrial discovery motion for the purpose of ascertaining the informant's name and whereabouts, Officer Wilson testified that he knew him by his first name of "Bill" only, that the informant was a male Caucasian, 19 to 28 years of age, 5 feet 9 or 10 inches in height, with light brown hair and of medium complexion. Wilson could not recall the color of his eyes. He did not know the informant's address. He knew only that the informant frequented Cantor's on Fairfax, the Brave New World, and a coffee house on Cosmo[s] Alley in Hollywood. The informant was his (Wilson's) rather than his partner-officer McKnight's and the information supplied by the informant had previously "led to a number of arrests and convictions of individuals in the Hollywood area."

Defendant Hale's residence at 8750 Hollywood Boulevard was placed under surveillance on three or four separate occasions, principally at night. The overall period of observation approximated six hours. During that time-period between 25 and 30 individuals entered the premises and left after a stay of five to ten minutes on each occasion. This indicated nar-

cotic traffic to Officer McKnight. The officers kept Hale's residence under observation for about 15 to 20 minutes commencing at 8 p.m. on the night of December 13, 1965. They had gone there for the purpose of investigation and not to make an arrest. They had obtained neither an arrest nor a search warrant.

Prior to going to defendant Hale's residence, Officer McKnight had ascertained that police officers from the burglary detail of the Hollywood station had gone to the residence for burglary investigation purposes earlier that day around 10 or 11 a.m.

Officers McKnight and Wilson went to the door of the residence which opened onto the carport and knocked. A voice from within asked, "Who is there?" McKnight replied, "Police officer." Defendant Hale then came to the door. McKnight showed Hale his badge and identified himself as a police officer. The officer asked, "William Hale?" Defendant replied, "Yes." McKnight then stated, "We would like to speak to you." Defendant Hale then said, "Come on in."

As the officers entered the home, defendant Hale inquired whether McKnight was there because of his contact with the police early that morning. Hale did not wait for an answer, but going towards the Hollywood Boulevard door, he explained that he forced an entry into his home earlier that morning because he had forgotten his key; that the police had responded to this activity on Hale's part; that he had been questioned as a possible burglary suspect and inquired if McKnight was conducting a follow-up investigation of the incident.

The officers followed in the direction where defendant Hale went and by this time were in the middle of the living room. At that time, McKnight stated that he was a narcotics officer and was not investigating the "burglary incident." He had had no opportunity to explain this to Hale before then.

At this juncture, McKnight saw a white plastic scale on a table in front of him, a metal pan, and what appeared to him to be marijuana debris in the pan. There was a high-intensity lamp on the desk facilitating his view into the pan. McKnight then had been on the narcotics detail for two years. According to McKnight, the scale and pan were common paraphernalia for narcotics use and preparation of narcotics. The pan is used to manicure marijuana and the scales would also be present for such activity. They would also indicate possession of marijuana for purposes of resale.

McKnight then placed Hale and a woman, Gilda Texter, who was in the house, under arrest for possession of marijuana.

He advised both defendant Hale and the woman that they had the right to an attorney, the right to remain silent, and that any statements they made could be used against them in subsequent criminal proceedings.

McKnight then asked defendant Hale if he had any more pot in the house, stating that while they were there they might as well get all of it. Hale replied, "Yes, I have some more upstairs." Motion to strike this question and answer for lack of a Miranda[1] warning was made at trial on September 8, 1966 and denied.

McKnight accompanied defendant Hale to the upper portion of his apartment and went to an area where there was a small portable safe. Defendant Hale removed a key from the upper portion of a closet, unlocked the safe and removed a brown paper bag containing 56½ grams (approx.) of marijuana (plant material), and three packages of zig-zag cigarette paper. A few milligrams of marijuana (plant material) were recovered from a trash receptacle adjacent to the premises at 8750 Hollywood Boulevard. Forty milligrams of debris and plant material were in the pan beside the scale.

After recovering the marijuana from the upstairs safe, McKnight and defendant Hale returned downstairs. There was further conversation (contents not reported) between McKnight and defendant Hale. A partial search of the premises was conducted.

Around 8:10 p.m., the telephone rang. McKnight answered it. The voice on the other end identified himself as "Tony" and asked for Bill. McKnight told the other party that Bill was outside and not immediately available near the telephone. The male voice then said, "Tell Bill I want one and I will call him back in about twenty minutes." The telephone again rang around 8:20 p.m., and McKnight answered it. The caller identified himself as "Tony" and asked if Bill was there. McKnight stated, "No" but that Bill had just called and would be on his way back to the house in a minute. The caller then asked if he (Bill) had scored the stuff, and McKnight replied, "Yes. How much do you want?" The other party replied, "One key" and further stated that Bill owed him

[1]Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

four ounces. McKnight told him to come on up as by that time Bill would be back.

Objection and motion to strike were made by defendant Roller upon the grounds that the conversation was hearsay as to him. The motion to strike was granted. A similar objection and motion to strike made by defendant Hale was denied.

McKnight explained that "key" was an abbreviation or slang term for "kilogram," which represents 2.2 pounds of marijuana. Marijuana is generally packaged in these 2.2 pound packages for shipment into the United States.

At approximately 8:30 p.m., a male person parked his Volkswagen bus directly outside the residence at 8750 Hollywood Boulevard. There was a knock on the door. McKnight opened the door and observed defendant Roller. McKnight asked, "Tony?" He replied, "Yes." McKnight then said, "Come on in." As defendant Roller entered, Hale stood up, held his hands up to show Roller that he was handcuffed, blurting, "I have been busted."

At this time, McKnight patted defendant Roller down for any weapons he might be carrying. In doing so, he felt a wax paper bag inside Roller's right coat pocket, which he thought was a "can of marijuana." He removed it and found it to contain a green leafy substance and placed defendant Roller under arrest. McKnight had purchased marijuana packaged in this manner when he was working as an undercover agent. The package contained approximately 15 grams of marijuana.

Neither defendant testified nor offered any evidence in defense.

Timely objections to admission of the real evidence and motions to strike it in its entirety and to dismiss the case were made and overruled.

### Entry Into Premises Was Legal

Both defendants contend that the officers' entry into defendant Hale's premises at 8750 Hollywood Boulevard was illegal, relying upon the rule that an entry obtained by trickery, stealth or subterfuge renders an ensuing search and seizure invalid. (*People* v. *Reeves* (1964) 61 Cal.2d 268, 273 [38 Cal.Rptr. 1, 391 P.2d 393]; *People* v. *Roberts* (1956) 47 Cal.2d 374, 378 [303 P.2d 721].) Their reliance upon that rule is misplaced.

In response to the voice from within, "Who is there?" Officer McKnight replied, "Police officer." When defendant Hale came to the door, McKnight displayed his badge, identified himself as a police officer, and inquired, "William

Hale?" Defendant responded, "Yes." McKnight then said, "We would like to speak to you," and defendant Hale replied, "Come on in."

There was no false answer as in *People* v. *Hodson* (1964) 225 Cal.App.2d 554 [37 Cal.Rptr. 575] in response to a question, "Who is it?" An officer knocking on an apartment door replied, "The manager," nor a misleading answer like, "You have a caller" (connoting a social or business visitor) as in *People* v. *Miller* (1967) 248 Cal.App.2d 731 [56 Cal.Rptr. 865]. Here McKnight answered truthfully, "Police officer," which was notice that a matter of law enforcement was involved.

"... [I]t is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes." (*People* v. *Michael* (1955) 45 Cal.2d 751, 754 [200 P.2d 852].) And if the entry is with consent, there is no violation of constitutional rights. (*People* v. *Michael, supra,* p. 753; cf. *People* v. *Contreras* (1963) 211 Cal.App.2d 641, 645-646 [27 Cal.Rptr. 619] [even implied consent upheld].) Once inside the officer does not have to blind himself to objects such as the scale, pan and marijuana debris which were in sight. (*People* v. *Roberts* (1956) 47 Cal.2d 374, 380 [303 P.2d 721].)

The fact that defendant Hale was under a subjective misapprehension that the officers were there to continue a burglary investigation is immaterial. He knew that the persons he was inviting in were policemen. There is no legal impediment to an officer on a burglary detail making an arrest for illegal possession of marijuana when he sees it and believes it to be contraband. The issue of consent is a question of fact to be determined under the circumstances peculiar to each case. (*People* v. *Michael, supra,* p. 753.) The finding of the trial court on this issue on conflicting evidence will not be disturbed upon appeal. (*People* v. *Carrillo* (1966) 64 Cal.2d 387, 390-391 [50 Cal.Rptr. 185, 412 P.2d 377]; *People* v. *Neal* (1960) 181 Cal.App.2d 304, 308 [5 Cal.Rptr. 241].)

MARIJUANA FOUND UPSTAIRS ILLEGALLY OBTAINED

Due to no fault or intentional wrongdoing upon the part of the officers, the marijuana which was found upstairs, especially in the safe which defendant opened, must be suppressed as being the product of an illegal interrogation. (*People* v. *Buchanan* (1966) 63 Cal.2d 880, 887 [48 Cal.Rptr. 733, 409 P.2d 957]; *People* v. *Carlin* (1968) 261 Cal.App.2d

30, 35-37 [67 Cal.Rptr. 557].) The arrest occurred on December 13, 1965, six months prior to the decision in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. This trial, however, was not commenced until August 8, 1966, and the *Miranda* rules were applicable. (*Johnson* v. *New Jersey* (1966) 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772]; *People* v. *Rollins* (1967) 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 22].) The warning which the officers gave to defendant Hale prior to eliciting information from Hale that he had more marijuana upstairs fell short of a *Miranda* warning.[2]

### EVIDENCE SUSTAINS HALE'S CONVICTION

Exclusion of this foregoing portion of the marijuana reduces the quantity of marijuana lawfully seized from Hale to the 40 milligrams of debris and plant material in the pan next to the scale and a few milligrams of marijuana plant material recovered from the trash receptacle. Does *People* v. *Leal* (1966) 64 Cal.2d 504 [50 Cal.Rptr. 777, 413 P.2d 665] then apply? We hold, "No." The court in *Leal* stated at page 512: "We do not say, however, that the discovery of traces of narcotics in a defendant's possession is without legal significance. Clearly, the presence of those traces may serve as evidence in proof of many types of narcotics offenses."

In addition to the marijuana debris in the pan and in the trash receptacle were the scales and the pan itself. The officer experienced in narcotic traffic testified that these were instruments used in "curing" and packaging marijuana for sale. The telephone calls circumstantially establish the Hale premises as a place from which marijuana in commercial quantities, to wit, "key," "kilogram," or "2.2 pound" units, was being sold, furnished, or distributed. (*People* v. *Fischer* (1957) 49 Cal.2d 442, 447 [317 P.2d 967]; *People* v. *Carella* (1961) 191 Cal.App.2d 115, 139 [12 Cal.Rptr. 446], and cases there cited; Witkin, Cal. Evidence (2d ed. 1966), pp. 435-436.) There was heavy traffic of persons in and out of this residence, with the persons remaining only five to ten minutes on each occasion. McKnight explained this to be an indicia of narcotic traffic. (Cf. Evid. Code, § 801; *People* v. *Beasley* (1967) 250 Cal.App.2d 71, 79 [58 Cal.Rptr. 485].) Marijuana plant material also was found in the trash receptacle. Despite the suppression of the bulk of the marijuana recovered from the upstairs portion of Hale's apartment, the foregoing evi-

---

[2]See *People* v. *Carlin* (1968) *supra,* 261 Cal.App.2d 30, 34, fn. 7.

dence is adequate to establish that shortly before the arrest Hale possessed marijuana for purposes of sale.

## Search of Roller Legal

■ The search of defendant Roller was lawful. The trial court erroneously granted defendant Roller's motions to strike the telephone conversations as hearsay.[3] ■ Hearsay is competent for the purpose of establishing reasonable and probable cause for search and seizure. (*People* v. *Boyles* (1955) 45 Cal.2d 652, 656 [290 P.2d 535].) ■ Arrival at a given location of a person bearing the same name as that given by a caller on the telephone at the approximate time given in a telephone conversation is probative of the fact that the ''Tony'' on the telephone and the ''Tony'' at the door are in fact one and the same person. (*People* v. *Gonzales* (1968) 68 Cal.2d 467, 472 [67 Cal.Rptr. 551, 439 P.2d 655]; *People* v. *Sandoval* (1966) 65 Cal.2d 303, 306-307, 308 [54 Cal.Rptr. 123, 419 P.2d 187]; *People* v. *Graff* (1956) 144 Cal.App.2d 199, 206 [300 P.2d 837]; *People* v. *Goldstein* (1948) 84 Cal.App.2d 581, 590 [191 P.2d 102].) As Roller entered the door, Hale stood up and showing his handcuffed hands blurted, ''I have been busted,'' which a trier of fact can well interpret as a warning to Roller.

As the People point out a frisk for weapons even in a *Mickelson*[4] type of stop indoors would have been proper and the marijuana found in that connection was lawfully seized. (*People* v. *Machel* (1965) 234 Cal.App.2d 37, 46 [44 Cal.Rptr. 126].)

## Disposition

■ Suppression of the 56.5 grams of the marijuana leaves about 40 milligrams or only 1/1413th of the original quantity received into evidence. Although the evidence is sufficient to support Hale's conviction, we are unable to say that beyond a reasonable doubt the trial court would have reached the result it did, absent the 56.5 grams of marijuana

---

[3] The People may properly raise this issue on defendants' appeal. (Pen. Code, § 1252; *People* v. *Ditson* (1962) 57 Cal.2d 415, 431 [20 Cal.Rptr. 165, 369 P.2d 714].) The marijuana on Roller was admitted without these conversations. With these conversations fortifying the basis for search, we would expect no different ruling on its admissibility by the trial court.

[4] *People* v. *Mickelson* (1963) 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658], holding that one may be stopped for brief questioning although the officer's knowledge and surrounding circumstances may be short of reasonable and probable cause for arrest.

seized in violation of Hale's federally protected constitutional rights. Under *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824], and *Anderson* v. *Nelson* (1968) 390 U.S. 523 [20 L.Ed.2d 81, 88 S.Ct. 1333], Hale's conviction must be reversed.

We have no such problem with Roller's case. The "can of marijuana" of approximately 15 grams found in his right coat pocket was the product of a lawful search.

The judgment (order granting probation) as to defendant Hale is reversed; the judgment (order granting probation) as to defendant Roller is affirmed.

Kaus, P. J., and Hufstedler, J., concurred.