Filed 10/19/22  P. v. Marquez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JIMMY MARQUEZ,<br><br>    Defendant and Appellant. | F083776<br><br>(Super. Ct. No. BF180965A)<br><br><br>**OPINION** |

## THE COURT\*

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

William Safford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Doris A. Calandra and Christopher J. Rench, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

\*Before Peña, Acting P. J., Meehan, J. and Snauffer, J.

## INTRODUCTION

Defendant Jimmy Marquez, also known as Jimmy Lopez, pleaded no contest to a violation of Health and Safety Code section 11370.1, subdivision (a) after the trial court denied his motion to quash a warrant and suppress evidence obtained during a search of his residence and car. On appeal, he challenges the court's denial of his motion to quash and suppress, asserting the search warrant was not supported by probable cause, and the good faith exception did not apply to render the retrieved evidence admissible.

We affirm.

## FACTUAL BACKGROUND

Defendant was charged with felony violations of Health and Safety Code sections 11351 (possession of cocaine for sale), 11366 (maintaining or opening a place for selling, giving away, or using cocaine), and 11370.1, subdivision (a) (possessing a substance containing cocaine while armed with a loaded, operable firearm), and Penal Code sections 29800, subdivision (a)(1) (unlawful possession of a firearm by a felon), and 30305, subdivision (a) (unlawful possession of ammunition by a felon), and a misdemeanor violation of Penal Code section 496, subdivision (a) (unlawful receipt of stolen property) after contraband and drug-related paraphernalia were retrieved during a search of his residence and car on January 15, 2020.

He moved to quash the warrant pursuant to which the search was conducted, and suppress the evidence obtained during the search, including suspected methamphetamine, digital scales, cellular phones, pay-and-owe sheets, firearms, ammunition, magazines, and money. He attached to his motion the warrant to search his residence and a white 2019 Acura and a probable cause statement/affidavit of Detective Carlos Arvizu submitted in support of the warrant. In the affidavit, Detective Arvizu detailed his training and experience in the police department and his expertise regarding narcotics sales. He further averred:

"Within the past ten days of this affidavit I have received information from a Confidential Informant … (CI) that a subject identified as [defendant], is involved in the sales of cocaine HCL from his residence …. The CI stated within the past 10 days they observed a significant amount of cocaine HCL, scales, and packaging and observed [defendant] packaging the cocaine HCL into smaller packages. The CI stated [defendant] drives a white vehicle which is usually parked on the apartment structure parking lot.

"A records check of [defendant] revealed a subject with a date of birth of [defendant's birth date]. I obtained a photograph of [defendant] and allowed the CI to view the photo. The CI confirmed [defendant] is the same subject whom he/she previously advised me was in possession of Cocaine HCL, scales and packaging.

"Within the past 10 days Bakersfield Police Department Narcotics investigators conducted surveillance of … apartment A. Detective A. Paiz observed [defendant] exit apartment A and enter and exit a white 2019 … Acura California plate # 8LUY747, which was parked on the apartment structure parking lot several times. While conducting surveillance of the apartments we observed several subjects approach the east facing door of … apartment A, exchange items quickly with [defendant] and quickly leave. While conducting surveillance of … apartment A, Detective Paiz observed a subject, later identified as Joshua [S.] arrived in a vehicle and approached the east facing door of the apartment. Detective Paiz observed [defendant] open the door and exchanged items with [Joshua S.]. [Joshua S.] responded back to the vehicle and left the area. A traffic enforcement stop was conducted for Vehicle Code violations and a lawful search was conducted of the vehicle at which time a large amount of cocaine was located in [Joshua S.]'s possession. [Joshua S.] was arrested for violation of HS 11350(a)—possession of cocaine …."

Detective Arvizu represented he knew the confidential informant was familiar with "cocaine HCL, its appearance, method of packaging, and use of the drug" based on the informant's past experience with cocaine HCL. He also explained that the informant "will receive consideration on a pending case for assisting in the investigation if it concludes in a successful arrest, seizure of cocaine HCL and evidence related to the sales of cocaine HCL." He averred, based upon his training and experience, he knew "subjects

who sell narcotics will commonly have several subjects respond to their residence and conduct the transactions quickly at or near a front or side door."

Also attached to the motion was a declaration of Detective Paiz listing the inventory taken from defendant's residence pursuant to the warrant, including 25 grams of suspected methamphetamine, a small silver scale and a large silver scale, over $20,000 in United States currency, multiple "c-phone[s]," pay-and-owe sheets, a black Glock pistol, a Bersa firearm, magazines, and ammunition.[1]

In his motion to quash and suppress, defendant argued the search warrant was not supported by probable cause because the affidavit in support of the warrant offered "nothing more than conjecture and speculation" and did not "provide a substantial basis for criminal activity." He alleged, the connection between his property and "a narcotics operation" consisted entirely of "pedestrian facts." He argued the surveillance of his home was meant to corroborate the confidential informant's claims and connect defendant with drug sales, but it "failed to provide a concrete connection, and instead only presented more facts for speculation." He contended the confidential information was also not shown to be reliable. He further argued the good faith exception should not apply because "no reasonably well-trained officer would rely on such a warrant" because the affidavit on which it was based "was so lacking in indicia of probable ca[u]se as to render official belief in its existence entirely unreasonable."

The People opposed the motion, arguing the search was lawfully conducted. They argued the warrant was supported by probable cause established by Detective Arvizu's affidavit in which he detailed the information provided by the confidential informant that was corroborated by the subsequent police investigation. They also argued the good faith

---

[1]In the People's opposition to defendant's motion to quash and suppress, they stated, though Detective Paiz's declaration states the substance located was suspected methamphetamine, "the substance was in fact cocaine." They did not cite to the record in support of this contention.

exception applied to this case, meaning that the police relied in good faith on the warrant, and their reliance was objectively reasonable. Accordingly, the resulting items seized were not subject to exclusion.

The court denied defendant's motion to quash and suppress. Before denying the motion, at the hearing, the court questioned what information showed the confidential informant was reliable. The prosecutor argued the information provided by the informant was corroborated in that the police stopped an individual after he "exchang[ed] items" with defendant, and that individual was found in possession of cocaine. The prosecutor also noted the confidential informant had a personal history with cocaine, its appearance, and its method of packaging, making him/her more familiar with the drug. The prosecutor further argued, alternatively, the good faith exception would apply because the detectives were operating under the good faith belief that the information was reliable. The court took the motion under submission and ultimately denied it.

The court issued a written ruling acknowledging that, while it was a "close call," the facts, "while minimal, when considered with all the facts in the search warrant, support a finding that the informant was in fact reliable." The court stated the affidavit in this case did not include straightforward information indicating the informant was reliable. The court noted the informant provided the address of the defendant, described defendant's white vehicle, and identified defendant in a photo and other "pedestrian facts" that did not bolster the reliability of the informant. But "the officers also observed several individuals (again unknown how many) approach the residence and exchange items quickly with the defendant. In addition, one subject was stopped in his vehicle after such an exchange and cocaine was located in his vehicle." The court further concluded, even "[i]f the affidavit was insufficient because of a lack of reliability of the informant, … the good faith exception applies. The affidavit was not so lacking in probable cause that it would be entirely unreasonable for a well-trained officer to believe that probable cause did exist."

5.

Thereafter, defendant pleaded no contest to possession of a controlled substance while armed with a loaded, operable firearm (Health & Saf. Code, § 11370.1, subd. (a)) in exchange for a low term sentence of two years' imprisonment. Defendant stipulated to the factual basis for the plea based on the police report.

## DISCUSSION

Defendant argues the court erroneously denied his motion to quash and suppress. We disagree.

### I. Standard of Review and Applicable Law

#### A. Probable Cause

"'In California, issues relating to the suppression of evidence derived from governmental searches and seizures are reviewed under federal constitutional standards.'" (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1212.) The United States Supreme Court has explained, "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" (*Illinois v. Gates* (1983) 462 U.S. 213, 236; accord, *United States v. Leon* (1984) 468 U.S. 897, 914 (*Leon*) ["Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination"].) "'[C]ourts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.'" (*Illinois v. Gates*, *supra*, at p. 236.) "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for … conclud[ing]' that probable cause existed." (*Id*. at pp. 238–239.)

In determining whether there is probable cause to support the issuance of a warrant, courts are to review the totality of the circumstances. (*Illinois v. Gates*, *supra*, 462 U.S. at pp. 230–231.) An informant's "'veracity'" or "'reliability'" and his "'basis of knowledge'" are "relevant considerations in the totality-of-the-circumstances analysis

6.

that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." (*Id.* at p. 233.)

### B. Good Faith Exception to Exclusionary Rule

The Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. (*Leon*, *supra*, 468 U.S. at pp. 900, 922.) "In the ordinary case an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.'" (*Id.* at p. 921.) "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." (*Id.* at p. 926.) "[T]he government has the burden to prove facts warranting application of the good faith exception." (*People v. Willis* (2002) 28 Cal.4th 22, 37.)

## II. Analysis

Defendant contends the court erred in denying his motion to quash the warrant and suppress evidence retrieved during a search of his residence and car. He argues the "centerpiece" of the affidavit in support of the warrant was information provided by a "presumptively unreliable informant" given that the informant was criminally involved or disposed, and the informant was promised consideration on a pending case for assisting in the investigation conditioned on the success of the investigation into defendant. He asserts the prosecution failed to rebut the presumption of unreliability through corroboration or other indicia of reliability. He argues "there was no direct evidence that

a single drug transaction took place, nor was there support for a circumstantial inference to that effect." Specifically, with regard to Detective Paiz's observation of several subjects approaching defendant's residence, exchanging items with defendant, and leaving, defendant contends there was no description of the items that were exchanged and there was no evidence regarding when the exchanges occurred, so they could have occurred days apart. He also contends the affidavit reflects the informant observed defendant in possession of "a significant amount of cocaine HCL"; but the individual who was searched after leaving defendant's house was found in possession of "a large amount of cocaine" which defendant contends is distinct from cocaine HCL. He further argues the "good faith exception" does not apply because the police's reliance on the affidavit was not objectively reasonable as it was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Finally, he asserts the allegedly erroneous denial of the motion to quash and suppress was not harmless.

We agree with the trial court that the probable cause determination is "close," but we conclude there is a substantial basis upon which to find probable cause. Here, though the confidential informant was subject to suspicion based on the informant's criminal background and the fact the information was provided in exchange for consideration in a pending case, the informant provided details of defendant's alleged criminal activity observed firsthand. (See *Illinois v. Gates*, *supra*, 462 U.S. at p. 234 ["[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case"].) The informant reported recently personally observing large quantities of cocaine HCL, scales, and drug-packaging paraphernalia at defendant's residence, and the informant actually saw defendant packaging the cocaine HCL into small packages. (Cf. *People v. French* (2011) 201 Cal.App.4th 1307, 1318–1319 [confidential informants' conclusory assertions

defendant was a drug dealer, that were not based on personal observations beyond one informant witnessing defendant take people to another room more than once, were insufficient to provide meaningful support for probable cause determination].)

The police's subsequent independent investigation revealed suspicious activity that sufficiently corroborated the confidential informant's report. (See *People v. Kershaw* (1983) 147 Cal.App.3d 750, 759 ["For corroboration to be incriminating it is not necessary that the activities the police observe point unequivocally toward guilt. It is sufficient that those activities give rise to a reasonable inference or strong suspicion of guilt."].) Detective Paiz's observation of "several subjects" approaching defendant's door and quickly exchanging items with defendant before quickly leaving, although possibly innocuous, could be deemed consistent with narcotics sales. (See *id.* at pp. 759–760 ["Frequent brief visits to a residence by numerous persons is an indication of narcotic traffic"; "'[t]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct'"]; *People v. Mikesell* (1996) 46 Cal.App.4th 1711, 1718 [heavy car traffic to and from defendants' house corroborated informants' information]; accord, *People v. Hale* (1968) 262 Cal.App.2d 780, 788 [heavy traffic of persons in and out of residence, with the persons remaining only five to 10 minutes on each occasion, were indicia of narcotic traffic].) Additionally, after one of the individuals involved in an "exchange" left defendant's residence, the police conducted a traffic stop of him, searched him, and recovered a large quantity of cocaine, further providing the basis of a reasonable inference in support of a probable cause determination. Thus, the officers' subsequent surveillance of defendant corroborated the informant's tip beyond mere "pedestrian facts," such as the defendant's address and car. (Cf. *People v. French*, *supra*, 201 Cal.App.4th at p. 1320 [absent corroboration of more probative facts, police corroboration of primarily "pedestrian facts" such as defendant's residence and vehicle was not basis to conclude informants' assertions of drug dealing by defendant were reliable].)

9.

Based on the totality of the circumstances provided by the police's surveillance and the information provided by the informant, there was a substantial basis for the magistrate's probable cause determination. Our conclusion is strengthened when we apply the rule that doubtful or marginal cases are to be resolved with a preference for upholding a search under a warrant. (See *People v. Mikesell*, *supra*, 46 Cal.App.4th at p. 1719; accord, *People v. Weiss* (1999) 20 Cal.4th 1073, 1082–1083 ["'"[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants"'"]; *United States v. Ventresca* (1965) 380 U.S. 102, 106 [noting previous decision "strongly supporting the preference to be accorded searches under a warrant," indicating "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall"].)

Irrespective, even if we were to conclude the affidavit was insufficient to establish probable cause, we agree with the magistrate the "good faith exception" applies to merit nonexclusion of the retrieved evidence. Here, the officer's reliance on the warrant was "objectively reasonable." (See *Leon*, *supra*, 468 U.S. at p. 922 ["the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable"].) Put differently, we cannot conclude this is a situation where the officer should have known the affidavit failed to establish probable cause. (See *People v. Camarella* (1991) 54 Cal.3d 592, 596 ["If a well-trained officer should reasonably have *known* that the affidavit failed to establish probable cause (and hence that the officer should not have sought a warrant), exclusion is required under the third situation described in *Leon*, and a court may not rely on the fact that a warrant was issued in assessing objective reasonableness of the officer's conduct in seeking the warrant. But in all other cases, unless one of the other limited *Leon* situations is triggered, *Leon*'s 'general' rule of nonexclusion will apply"].) Rather, the affidavit was

not so lacking in detail and information that the police should have known it did not establish probable cause. Thus, the good faith exception to the exclusionary rule also establishes the court did not err in denying defendant's motion to suppress.

Accordingly, we reject defendant's sole contention.

## DISPOSITION

The judgment is affirmed.

11.